NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

_____

)
THE UNITED STATES SMALL BUSINESS )
ADMINISTRATION AS RECEIVER FOR   )
PENNY LANE PARTNERS, L.P.,        )
                             )
      Plaintiff,   )
                             )      Civil Action No. 08-1396 (GEB)
   v.                )
                             )      **MEMORANDUM OPINION**
ABRAHAM HERBST,                  )
                             )
      Defendant.   )
_____)

**BROWN, Chief Judge**

This matter comes before the Court upon Plaintiff the United States Small Business

Administration as Receiver for Penny Lane Partners, L.P.'s ("Plaintiff" or "SBA") Motion for

Default Judgment. (Docket Entry No. 6.)  The Court has reviewed the parties' submissions and

decided the motions without oral argument pursuant to Federal Rule of Civil Procedure 78.  For the

reasons that follow, the Court will deny Plaintiff's Motion for Default Judgment.


## I.     BACKGROUND

The undersigned appointed Plaintiff on May 16, 2006, as Receiver during the resolution of

the matter United States v. Penny Lane Partners, L.P., Civil Action No. 06-1894.  The SBA filed the

instant complaint on March 17, 2008, "as receiver for Penny Lane Partners, L.P." ( "Penny Lane")

against pro se defendant Abraham Herbst ("Defendant").  (Docket Entry No. 1.) Plaintiff filed its

Affidavit of Service for Summons and Complaint on April 25, 2008, indicating that service occurred

on April 9, 2008.  (Docket Entry No. 4.)  Plaintiff, on July 10, 2008, filed its request for Entry of

Default, and the same was granted by the Clerk's Office on July 11, 2008.  (Docket Entry No. 5.)

On October 31, 2008, Plaintiff filed the instant Motion for Default Judgment. (Docket Entry No. 6.)

In response, after the Court granted Defendant's request for an extension of time to respond,

Defendant filed his Brief in Opposition to the motion on January 20, 2009. (Docket Entry No. 12.)

The Court also granted Plaintiff an extension of time to file its reply, and Plaintiff filed the same on

March 19, 2009.  (Docket Entry Nos. 19, 22.)[1]


II.     DISCUSSION

Plaintiff argues that this Court should grant default judgment because "Defendant was

properly served with the Summons and Complaint and has failed to answer or otherwise defendant"

against this action.  (Docket Entry No. 6-2 at 10.)  Plaintiff also points out that default was properly

entered against Defendant on July 11, 2008. (Id. at 11.)  Further, Plaintiff avers that pursuant to the

factors listed in Chamberlain v. Giampapa, 210 F.3d 154, 164 (3d Cir. 2000), it will be prejudiced

if the Court does not grant default judgment because it is charged with "preserv[ing] the estate assets

and avoid[ing] the unnecessary expense of defending against an unmeritorious claim or defense."

(Id. at 13.)  Plaintiff also argues that "Defendant does not have a meritorious defense" in that this

is a "breach of contract claim," that "Defendant signed the Limited Partnership Agreement," and that

"Defendant failed to pay the commitment."   (Id. at 13 to 14.)   Finally, Plaintiff asserts that

---

[1]      On May 6, 2009, the Court received an improper sur-reply from Defendant.
Because this brief was submitted in violation of Local Rule 7.1(d)(6), the Court will not consider
it.

"Defendant's delay is the result of culpable conduct" because Defendant failed to respond to the Complaint or request an extension of time to answer, despite three letters sent from Plaintiff's counsel on May 29, 2008, June 16, 2008, and August 8, 2008.  (Id. at 18.)  Plaintiff, however, acknowledges that Defendant responded to directly to Plaintiff "challenging the service and claims against him."  (Id. at 18.)  For these reasons, Plaintiff argues that the Court should grant default judgment for the amount demanded, $51,750.00 plus ten percent interest from October 31, 2006. (Id. at 19 to 20.)

Defendant, in opposition to the motion, first asserts that he contests jurisdiction because the Court "did not have the authority to order the stay" and "never had the right to interfere with [the] already ongoing prosecution of Penny Lane in New York Supreme Court by putting a hold on the case," and therefore, because this action stems from the United States v. Penny Lane Partners, L.P., Civil Action No. 06-1894, the Court is without jurisdiction.  (Docket Entry No. 12 at 2 to 3.) Defendant cites Riehle v. Marolies, 279 U.S. 218 (1929) for that authority.  (Docket Entry No. 12 at 3.) Further, Defendant asserts that the Receiver failed to file "the Receivership Court Order and underlying complaint in the district in which Defendant Herbst resides within ten days of the appointment as receiver" and therefore, pursuant to 28 U.S.C. §754, the Court does not have personal jurisdiction over Defendant.  (Id. at 3 to 4.)   Defendant also states that default judgment should not be granted because he was not properly served.  (Id. at 5.)  Defendant recounts the information provided in the Affidavit of Service, and disputes its truth, stating that no such woman as that described in the Affidavit exists, he does not have a black female housekeeper living with him, and even if he did, she would not have been entrusted with "accepting important legal papers on his behalf."  (Id.)

Defendant also asserts a number of defenses to the claim against him.  First, he asserts that "Penny Lane violated numerous rules and obligations long before any breach or default by Defendant was or could have been claim[ed]."  (Id. at 6.)  Defendant asserts that Penny Lane violated the agreement that he had with it by "distributing wildly differing amounts as distributions to private limited partners who had identical commitments;" that an accounting is necessary to determine whether "private limited partners were cheated out of a significant portion of their rightful distributions and tax benefits;" that Penny Lane failed to act after learning that "numerous other partners were not . . . institutional investors" and "were not even accredited investors, which was an absolute requirement;" that under Articles II and III, Penny Lane's management had the power, once a limited partner was unable or unwilling to fund his commitment to choose the remedy, and that such a remedy did not include suing the limited partner for breach of contract; that the Plaintiff admits that "Penny Lane authorized a write-down that reduced and/or eliminated all still-existing unfunded commitments;" that Defendant, "by virtue of the lawsuit brought against [Penny Lane]" in New York, had "given notice of the withdrawal of Abraham Herbst as an active and willing participant in the fund, and obviously no longer intended to participate in any future calldowns;" that Penny Lane breached the LPA first, and therefore, Defendant is not liable for any subsequent breach; that another ancillary matter involving Jackie Herbst should be determined first; and that the Receiver's claims regarding financial data and reports should not be taken at face-value.  (Docket Entry No. 12 at 6 to 13.)

In reply, Plaintiff counter-argues that default judgment should be granted because Plaintiff was properly served, because Plaintiff will be prejudiced with further litigation of this matter, that Defendant has not asserted a meritorious defense, and that Defendant's failure to properly answer

or respond to the Complaint was culpable conduct.  (Docket Entry No. 22 at 14 to 16.)  Plaintiff

asserts that the opposition provided by Defendant "simply rehashes the same arguments that the

Defendant made in the Receivership Action," United States of America v. Penny Lane Partner, L.P.,

Civil Action No. 06-1894, that the Court previously denied and as a result should not be relitigated

here.  (Docket Entry No. 22 at 6.)  Further, Plaintiff points out that the claims that Defendant asserts

as his meritorious defenses "were all summarily denied in the Receivership Action by the Orders

dated February 28, 2007 and July 23, 2008." (Id.)  Plaintiff also restates those arguments that had

not been previously raised by Defendant: "(a) this Court lacks personal jurisdiction jurisdiction over

him and (b) he is somehow entitled to be indemnified pursuant to Penny Lane's Agreement of

Partnership (the "Partnership Agreement") because of actions taken by Penny Lane's pre-

receivership management without the SBA's written consent." (Id.) Plaintiff asserts that "Defendant

resides in jurisdiction territory of the Eastern District of New York" and provided the Court with a

copy of the filings made in that District to assume personal jurisdiction over Defendant.  (Id. at 5

n.2.)[2]  Plaintiff also asserts that this Court has nationwide jurisdiction in this matter pursuant to 28

U.S.C. §1692.  (Id. at 5.)  Plaintiff further argues that pursuant to the court's jurisdiction as a result

of 28 U.S.C. §§ 754 and 1692, jurisdiction "is unimpaired by defendant's lack of contacts with the

State of New Jersey."  (Docket Entry No. 22 at 9.)

Plaintiff also argues that service was proper in that "the Process Server swears that he went

to Defendant's residence at 1212 East 21st Street, Brooklyn, New York 11210 on April 9, 2009 at

approximately 5:55 p.m. and delivered a copy of the summons and complaint to the female who

---

[2]    Although Plaintiff asserts that it attached filings for all four districts in New York to its reply brief, the Court notes that it only included filings for the Eastern, Northern, and Western Districts of New York, and for the Eastern District of Michigan Southern Division.

answered the door . . . but refused to disclose her name." (Id. at 10.)  Plaintiff states that "[t]he next

day, the Process Server mailed a copy of the summons and complaint to defendant in an envelope

addressed to defendant at said address and . . . marked "Personal and Confidential." (Id.)  Plaintiff

further argues that Defendant failed to provide a sworn affidavit or averment regarding his claims

that he does not have any such person who is a housekeeper who lives at the house.  (Id.)  Plaintiff

states that under New York's service statutes, which are applicable here, there is no requirement that

the person at the defendant's residence actually resides there.  (Id. at 11.)  Plaintiff points out that

in his opposition, "Defendant does not . . . deny that the Summons and Complaint were in fact

delivered to his house on April 9, 2008." (Id. at 12) (emphasis omitted).  Moreover, Plaintiff argues

that by virtue of the letter Plaintiff sent to Defendant dated May 29, 2008,  "Defendant had actual

notice of the lawsuit but deliberately chose not to answer it or timely challenge the sufficiency of

service." (Id.)

### 1.    Jurisdiction

Defendant has asserted as one of his defenses to this action that the Court is without

jurisdiction, and although he did not file a formal motion to dismiss on these grounds, the Court will

address this issue as a threshold matter.  When deciding whether to dismiss an action for lack of

jurisdiction, "a court is required to accept the plaintiff's allegations as true, and is to construe

disputed facts in favor of the plaintiff." Ledgestone Assocs., LLC v. Internet Methods, No. 06-567,

2008 U.S. Dist. LEXIS 49081 (D.N.J. June 27, 2008) (quoting Toys "R" Us, Inc. v. Step Two, S.A.,

318 F.3d 446, 457 (3d Cir. 2003)).  "If an issue is raised as to whether a court lacks personal

jurisdiction over a defendant[, however,] the plaintiff bears the burden of showing that personal

jurisdiction exists." Marten v. Godwin, 499 F.3d 290, 295-96 (3d Cir. 2007) (citing Gen. Elec. Co. v. Deutz AG, 270 F.3d 144, 150 (3d Cir. 2001)).

The standard to determine personal jurisdiction when a Receiver has been appointed differs from other inquiries regarding personal jurisdiction. As it has been noted, "[t]he purpose of the appointment of a Receiver is to place certain property under the exclusive control of one individual, appointed by and accountable to the court, for as long as is needed to effectuate the final judgment of the court free from interference by other tribunals." O'Leary v. Moyer's Landfill, Inc., 677 F. Supp. 807, 815 (E.D. Pa. 1988) (citation omitted). In addition, a "district court has within its equity power the authority to protect its jurisdiction over a receivership estate . . . consistent with Federal Rule of Civil Procedure 65" but may be limited by statutory and constitutional considerations "which limit the jurisdiction of federal courts." Gilchrist v. Gen. Elec. Capital Corp., 262 F.3d 295, 302 (4th Cir. 2001).

"A receiver appointed in any civil action or proceeding involving property . . . situated in different districts shall . . . be vested with complete jurisdiction and control of all such property with the right to take possession thereof." 28 U.S.C. § 754. However, the Receiver must "file copies of the complaint and such order of appointment in the district court for each district in which property is located" within ten days of the appointment of the Receiver. Id. In addition, "[i]n proceedings in a district court where a receiver is appointed for property, real, personal, or mixed, situated in different districts, process may issue and be executed in any such district as if the property lay wholly within one district." 28 U.S.C. § 1692.

The Court notes that its Order dated May 16, 2006, in relation to Civil Action No. 06-1894, United States v. Penny Lane Partners, L.P., states that this Court has continuing jurisdiction in all

matters where the SBA acts as Receiver for Penny Lane. In this matter, the SBA brings the instant

action, according to the Complaint, in its capacity as Receiver, against Defendant, asserting a breach

of contract cause of action in relation to a Limited Partnership Agreement ("LPA") that Defendant

signed, agreeing to be a private limited partner in Penny Lane.

It is Plaintiff's burden to prove that personal jurisdiction exists. To meet this burden, Plaintiff

provided the Court with the letter and filings in the Eastern District of New York where Defendant

resides, dated May 23, 2006, and filed May 25, 2006, that fulfilled its filing requirement pursuant

to the statute.  This indicates that the requirements of 28 U.S.C. § 754 were properly satisfied.

Further, the Court concludes that the ten-day requirement was satisfied, given that the Receiver was

appointed on May 16, 2006.  Therefore, the Court concludes that it properly has personal jurisdiction

over Defendant.

### 2.       Default Judgment Standard of Review

Default is governed by Federal Rule of Civil Procedure 55.  FED. R. CIV. P. 55.  Rule 55(a)

provides, in relevant part, as follows: "When a party against whom a judgment for affirmative relief

is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise,

the clerk must enter the party's default." FED. R. CIV. P. 55(a).  "Thereafter, the plaintiff may seek

the Court's entry of default judgment under either Rule 55(b)(1) or Rule 55(b)(2)."  Doug Brady,

Inc. v. N.J. Bldg. Laborers Statewide Funds, No. 07-1522, 250 F.R.D. 171, 177, 2008 U.S. Dist.

LEXIS 28324 (D.N.J. April 7, 2008) (citation omitted).  "The district court has the discretion to enter

default judgment, although entry of default judgments is disfavored as decisions on the merits are

preferred."  Super 8 Motels, Inc. v. Kumar, No. 06-5231, 2008 U.S. Dist. LEXIS 28066 (D.N.J.

April 1, 2008) (citing <u>Hritz v. Woma Corp.</u>, 732 F.2d 1178, 1181 (3d Cir. 1983)).

Before entering default judgment, the court "must make explicit factual findings as to: (1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default."  <u>Doug Brady</u>, 250 F.R.D. at 177 (citing <u>Emcasco Ins. Co. v. Sambrick</u>, 834 F.2d 71, 74 (3d Cir.1987) (stating that "we have further required the district court to make explicit findings concerning the factors it must consider in rendering judgment by default or dismissal, or in declining to reopen such judgment")).  "In weighing these factors, district courts must remain mindful that, like dismissal with prejudice, default is a sanction of last resort."  <u>Id.</u> (citing <u>Poulis v. State Farm Fire & Cas. Co.</u>, 747 F.2d 863, 867-68 (3d Cir.1984)).  A defendant demonstrates a meritorious defense if "allegations of defendant's answer, if established on trial, would constitute a complete defense to the action." <u>United States v. $55,518.05 in U.S. Currency</u>, 728 F.2d 192, 195 (3d Cir. 1984).  Therefore, a defendant's assertions "must contain specific facts that would allow Defendants to advance a complete defense" and must be substantively sufficient.  <u>Days Inn Worldwide v. Jerbev Corp.</u>, No. 08-1659, 2009 U.S. Dist. LEXIS 29138, at *3-*4 (D.N.J. April 8, 2009) (citing <u>United States v. $55,518.05 in U.S. Currency</u>, 728 F.2d at 195-96; <u>Harad v. Aetna Cas. & Sur. Co.</u>, 839 F.2d 979, 983 (3d Cir. 1988)).

### 2.    Analysis

The Office of Clerk of this Court granted Plaintiff's request for an entry of default under Federal Rule of Civil Procedure 55(a).  <u>See</u> <u>Husain v. Casino Control Comm'n</u>, No. 07-3636, 2008 U.S. App. LEXIS 3700, at *4 (3d Cir. Feb. 20. 2008) (stating that "entry of default by the Clerk under Federal Rule of Civil Procedure 55(a) constitutes a general prerequisite for a subsequent

default judgment under Rule 55(b)"). See also Bank of Nova Scotia v. James, No. 2005-08, 2008 U.S. Dist. LEXIS 79240 (V.I. Oct. 8, 2008); Mims v. McCall, No. 06-4551, 2008 U.S. Dist. LEXIS 43092 (D.N.J. June 2, 2008); 10A Charles Alan Wright, Federal Practice and Procedure § 2682 (2007) (stating that "[p]rior to obtaining a default judgment under either Rule 55(b)(1) or Rule 55(b)(2), there must be an entry of default as provided by Rule 55(a)").

Next, the Court must determine whether Defendant has a meritorious defense. Many of Defendant's asserted meritorious defenses are actually counter-claims, which this Court has previously determined are derivative actions, and as a result, cannot be brought against the Receivership. See United States v. Penny Lane Partners, L.P., Civil Action No. 06-1894, 2008 U.S. Dist. LEXIS 58371 (D.N.J. July 24, 2008) (stating that "[m]ost of the claims in the Herbst Litigation fail to state a cognizable claim because they are derivative causes of action[]" and holding that none of Abraham Herbst's claims therein stated should be permitted to proceed). Defendant also asserts as another defense that Penny Lane breached the LPA first, and therefore, Defendant is not liable for any subsequent breach. Defendant also argues that by virtue of the lawsuit he filed against Penny Lane in New York, he had provided notice to it that he had withdrawn from the partnership, and it would therefore follow that he was thereafter no legally responsible for his failure to pay the capital commitment. Finally, Defendant argues that Penny Lane made the determination that should the private limited partners decide not to "fund the last calldown, they would simply be held at their current level and be prohibited from tendering additional monies in the event that the fund took an upturn." Apparently, this decision was communicated to Defendant in an email, and as a result of this dispute, Defendant claims that he is entitled to be indemnified by the management of Penny Lane. These actions refer to those taken by Penny Lane's pre-receivership management without the

SBA's written consent.

Turning to Defendant's argument that Penny Lane breached the contract first, and therefore, Defendant could not have subsequently acted in breach of the contract, the Court rejects this defense. As one court has noted, "a material breach is a failure to do something that is so fundamental to a contract that the failure to perform that obligation defeats the essential purpose of the contract or makes it impossible for the other party to perform under the contract." O&G Indus. v. Hartford Fire Ins. Co., 537 F.3d 153, 163 (2d Cir. 2008) (citing 23 Williston on Contracts § 63:3 (4th ed. 2007) (footnotes and internal quotation marks omitted)). Even if this Court concluded that the allegations made by Defendant constituted a material breach, Defendant fails to state facts that he personally did not receive his fair percentage, and rather, simply states that other partners did not receive their fair percentage. Therefore, these assertions regarding Penny Lane's failure to pay other partners are not only derivative in nature, they are legally flawed and are also irrelevant in respect to the claims against Defendant in this ancillary action.

Next, Defendant asserts that he provided notice, by filing a lawsuit in New York, that he no longer intended to participate in the partnership, and thus, he was not responsible, after that date, for any future financial obligations under the LPA. Plaintiff does not specifically address this point, but rather refers to "the reasoning set forth in: (a) Receiver's Opposition to Defendant's motion to intervene and lift the Receivership Stay; (b) the Magistrate John J. Hughes' Order dated February 1, 2008 denying Defendant's motion to intervene and lift the stay; and (c) the Claims Determination Orders." (Docket Entry No. 22 at 15.) Although the Court makes no determination at this time whether the filing of a suit in this circumstance provided proper notice of withdrawal from the partnership, the Court concludes that if Defendant can prove these facts at trial, and if in fact the law

11

permits such notice, it would constitute a complete defense to the charges against him.

Finally, Defendant asserts that he is not liable for any unpaid amount of his capital commitment because Penny Lane decided to modify the agreement and permit partners to not pay their original commitment prior to the Receivership Order, thereby releasing them from their obligations.  Defendant failed to attach this written documentation to his opposition to the motion. Plaintiff notes in its brief that this argument was not previously addressed.  It also failed to attach an affidavit to its submission.  Therefore, the Court presently lacks the ability to consider the language of such a release, if it indeed exists.  However, if it exists, to the extent that these assertions are true and the LPA in fact was legally modified, Defendant's assertion of a release would constitute a complete defense to this action.   Therefore, Defendant has presented a meritorious defense, and default judgment, accordingly, should not be granted.

The Court, therefore, need not determine at this juncture, either of the two remaining prongs, specifically whether Plaintiff would be prejudiced should this action be permitted to proceed, or whether Defendant's failure to timely answer or otherwise respond was the result of his culpable conduct.  Further, to the extent that the parties disagree regarding whether Defendant was properly served, the Court notes that clearly Defendant now has proper notice of these proceedings.

III.    CONCLUSION

For the foregoing reasons, the Court denies Plaintiff's Motion for Default Judgment.  An appropriate form of Order accompanies this Opinion.

Dated: May 14, 2009

s/ Garrett E. Brown, Jr.
GARRETT E. BROWN, JR., U.S.D.J.